UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                    :

In re:                           :          Chapter 15
                                   :          Case No. 08-14757 (SMB)

      GLITNIR BANKI HF.,       :

                                   :

          Debtor in a Foreign Proceeding.   :
------------------------------------------------------------X

### MEMORANDUM DECISION AND ORDER
### GRANTING IN PART AND DENYING IN
### PART MOTION TO QUASH SUBPOENAS

**A P P E A R A N C E S :**

PAUL, WEISS, RIFKIND, WHARTON &
  GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064

    Alan W. Kornberg, Esq.
    Abigail Clark, Esq.
      Of Counsel

      – and –

STEPTOE & JOHNSON LLP
750 Seventh Avenue, Suite 1800
New York, New York 10019

    Michael C. Miller, Esq.
    Evan Glassman, Esq.
      Of Counsel

*Attorneys for the Foreign Representative of*
  *Glitnir banki hf.*

PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710

    Kim J. Landsman, Esq.
    Daniel A. Lowenthal, Esq.
      Of Counsel

*Attorneys for Jón Ásgeir Jóhannesson and*
  *Ingibjörg Stefanía Pálmadóttir*

1

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

The Foreign Representative of Glitnir banki hf. (the "Bank"), which is undergoing

liquidation in Iceland, served subpoenas on two banks and a cooperative apartment corporation

seeking the production, *inter alia*, of documents containing the personal financial information of

Jón Ásgeir Jóhannesson ("Jóhannesson") and Ingibjörg Stefanía Pálmadóttir ("Pálmadóttir," and

collectively with Jóhannesson, the "Movants").  The Movants, husband and wife, have moved to

quash the subpoenas.[1]

The subpoenas are, for the most part, a fishing expedition into the Movants' private

financial records with little if any relevance to the Bank's "acts, conduct, or property or to the

liabilities and financial condition of the debtor."  Accordingly, the Motion is granted in part and

denied in part.

## BACKGROUND

This case relates to a proceeding to wind up the affairs of the Bank currently pending

before the Financial Supervisory Authority of Iceland and the District Court of Reykjavik (the

"Icelandic Proceeding").  The Foreign Representative appointed in the Icelandic Proceeding[2]

commenced this case under chapter 15 of title 11 of the United States Code on November 26,

2008, and on January 7, 2009, the Court entered an order recognizing the Bank's foreign

proceeding as a foreign main proceeding.  (ECF Doc. # 20).

---

[1]     *See Motion of Jón Ásgeir Jóhannesson and Ingibjörg Stefanía Pálmadóttir for Entry of an Order Pursuant to Rule 9016 of the Federal Rules of Bankruptcy Procedure Quashing Certain Third Party Subpoenas or, in the Alternative, for Entry of a Protective Order*, dated Apr. 22, 2011 (the "*Motion*") (ECF Doc. # 87).

[2]     A second Foreign Representative replaced the first Foreign Representative earlier this year.  Unless the contrary is indicated, any reference to the Foreign Representative means the person or entity that occupied the position at the time.

On March 18, 2011, the Court signed the *Revised Amended Order Recognizing Foreign Main Proceeding of Glitnir banki hf., and Granting Permanent Injunction* (the "*Second Recognition Order*") (ECF Doc. # 74). Among other things, the Second Recognition Order provided that the "Foreign Representative is hereby authorized to examine witnesses, take evidence, seek production of documents, and deliver information concerning the assets, affairs, rights, obligations or liabilities of Glitnir, as such information is required in the Icelandic Proceeding under the law of the United States."

## A.    The State Court Litigation

On May 11, 2010, the Foreign Representative commenced an action in the Supreme Court of the State of New York against the Movants and others. The gist of the state court complaint (the "Complaint")[3] was a scheme by the individual defendants to loot $2 billion from the Bank through loans to or transactions with third parties in which they held financial interests. (*See Complaint* ¶¶ 1–2.) Several of the individual defendants were officers and/or directors of the Bank. Jóhannesson, an Icelandic citizen, was not, but according to the Complaint, he controlled the Bank's board and senior management as an officer and/or director of certain entities that owned shares in the Bank including, Baugur Group hf. ("Baugur") and FL Group hf. ("FL"). (*Complaint* ¶¶ 12–13.) Through his control, Jóhannesson acted as "ring leader" of the scheme to loot the Bank. (*See Complaint* ¶ 14.) Finally, the Complaint alleged that Pálmadóttir, also an Icelandic citizen, is the "Defendant Jóhannesson's wife, business partner and alter ego." (*Complaint* ¶ 19.) In addition, she was an owner or director, or both, of several of the companies utilized by Jóhannesson to loot the Bank, including Baugur, Landic Property hf. ("Landic"),

---

[3]    A copy of the Complaint is attached as Exhibit 5 to the *Declaration of Evan Glassman in Opposition to Motion to Quash Third Party Subpoenas*, dated May 12, 2011 ("*Glassman Declaration*") (ECF Doc. # 92).

Thyrping hf. ("Thyrping"), 101 Capital ehf. ("101 Capital") and 101 Chalet ehf. ("101 Chalet"),
which she jointly owned with Jóhannesson.  (*Complaint* ¶ 20.)

The Complaint asserted fifteen causes of action.  The first nine claims alleged breaches of
fiduciary duty under Icelandic statutory law, including claims that the individual defendants,
other than Pálmadóttir, were "Directors, *de facto* Shadow Directors or Managers" of the Bank.
(*See Complaint* ¶ 229.)  None of the first nine claims were asserted against Pálmadóttir.  The
tenth cause of action, asserted against all defendants, alleged a violation of the Icelandic *culpa*
principle; specifically, each of the defendants engaged in willful misconduct or negligence that
proximately caused damage to the Bank.  (*See Complaint* ¶¶ 275–79.)  The last five claims were
apparently based on New York law.  The eleventh and twelfth causes of action alleged claims
against all of the individual defendants, sounding, respectively, in conversion and unjust
enrichment.  The thirteenth and fourteenth causes of action contended that the defendant
PricewaterhouseCoopers hf. committed accounting malpractice and breached its contract with
the Bank.  Finally, the fifteenth cause of action asserted a claim for actual fraudulent transfers
under the New York Debtor and Creditor Law.

The defendants moved to dismiss the New York action on the basis of *forum non
conveniens*.  Both sides submitted expert affidavits relating to Icelandic law.  The defendants'
expert, Helgi Sigurdsson, an Icelandic lawyer, opined that neither the statutes cited in the
Complaint nor general Icelandic law imposed liability on so-called "shadow" or "*de facto*"
directors.  (*Affidavit and Expert Opinion of Attorney to the Supreme Court of Iceland and LLM*

*Helgi Sigurdsson*, sworn to July 7, 2010 ("*Sigurdsson Affidavit*"), at ¶¶ 1, 5(A), 5(C).)[4]

Similarly, Icelandic law would not impose liability under an *alter ego* theory.  (*Id.* at ¶¶ 1, 5(B),

5(C).)  Finally, Sigurdsson opined that persons who were neither directors nor officers of a

company do not owe fiduciary duties to the company under Icelandic law.  (*Id*. at ¶ 6.)

Sigurdsson did not offer an opinion regarding the viability under Icelandic law of the tenth cause

of action based on the *culpa* principle.

In response, the Foreign Representative submitted the *Affidavit of Thordur S. Gunnarsson*

("*Gunnarsson Affidavit*"), the Dean of Reykjavik University School of Law.[5]  While he agreed

with Sigurdsson that Icelandic legislation did not expressly impose liability on someone like

Jóhannesson who was not an officer or director of the Bank, he discussed a decision of the

Supreme Court of Iceland that arguably supported the Foreign Representative's claim.

(*Gunnarsson Affidavit* ¶ 20.)  In addition, he relied on the opinion of a Danish law expert, and

concluded that although the matter was admittedly unsettled, Icelandic law would impose

fiduciary duties on those who actually controlled a company or met the criteria of "shadow

directors."  (*Id.* at ¶¶ 22–25.)  Dean Gunnarsson also expressed the opinion that the tenth cause

of action asserted a viable claim against each of the defendants, presumably including

---

[4]      A copy of the *Sigurdsson Affidavit* is annexed as Exhibit E to the *Declaration of Kim J. Landsman in Support of the Motion of Jón Ásgeir Jóhannesson and Ingibjörg Stefanía Pálmadóttir for Entry of an Order Pursuant to Rule 9016 of the Federal Rules of Bankruptcy Procedure Quashing Certain Third Party Subpoenas or, in the Alternative, for Entry of a Protective Order*, dated April 22, 2011 ("*Landsman Declaration*") (ECF Doc. # 88).

[5]      A copy of the *Gunnarsson Affidavit* is annexed to the *Landsman Declaration* as Exhibit F.  The exhibit does not bear a notary's signature.

Pálmadóttir, under Icelandic law.[6]  (*Id.* at ¶ 18.)  He did not offer an opinion as to whether Icelandic law would recognize alter ego liability.

On December 22, 2010, Justice Ramos of the New York state supreme court dismissed the action on the basis of *forum non conveniens*.  He conditioned dismissal on the defendants' consent to jurisdiction in the Icelandic courts and their agreement not to raise jurisdictional defenses to enforcement of an Icelandic judgment in New York.  All of the defendants agreed to these conditions, but the Foreign Representative appealed the dismissal order, and the appeal is pending.

**B.    The Discovery in the Chapter 15 Case**

On March 23, 2011, the Foreign Representative filed a *Motion for an Order Permitting the Foreign Representative to Conduct Discovery* ("*Discovery Motion*") (ECF Doc. # 79).  It sought entry of an order under 11 U.S.C. § 1521, Rule 2004 of the Federal Rules of Bankruptcy Procedure, and 28 U.S.C. § 1782 to compel the Royal Bank of Canada ("RBC"), Citibank N.A. ("Citibank"), and 50 Gramercy Park North Owners Corp. ("50 GPN")[7] to produce documents primarily relating to the Movants' personal financial information.  The Foreign Representative did not give notice of the Discovery Motion to the Movants, even though it had sought similar discovery in the state court action and the Movants had opposed it.[8]  Following a hearing on

---

[6]    Dean Gunnarsson gave his opinion in response to the question "If you assume that the facts of the New York Complaint are accurate, do these facts satisfy the elements for each of the Icelandic law causes of action with respect to each of the defendants?"  (*Gunnarsson Affidavit* § D, at 5.)

[7]    50 GPN is a cooperative corporation that apparently owns a building located at 50 Gramercy Park North. The Movants purchased the shares and presumably entered into proprietary leases relating to the Penthouse and Unit 16A for $24 million.  They jointly own the property, although the percentage of their respective interests is in dispute.

[8]    In light of the dismissal of the action, the state court never ruled on the objections and the Foreign Representative did not receive the discovery.

6

April 7, 2011, the Court authorized the discovery.  (*See Order Permitting the Foreign Representative to Conduct Discovery*, Apr. 7, 2011 ("*Discovery Order*") (ECF Doc. # 84).)

The Foreign Representative subsequently served subpoenas on RBC (the "RBC Subpoena"), (*Landsman Declaration,* Ex. B), Citibank (the "Citibank Subpoena"), (*id.*, Ex. C), and 50 GPN (the "50 GPN Subpoena"), (*id.*, Ex. D).  The subpoenas seek documents and communications that generally fall into four categories: (1) the shares, proprietary lease and related property interests and obligations concerning the cooperative apartments that the Movants own in 50 Gramercy Park North (collectively, the "Co-op Property"); (2) the Movants' personal financial transactions and accounts; (3) sixteen companies, primarily but not exclusively Icelandic, that have a direct or indirect connection with the Movants and were involved directly or indirectly in the scheme to loot the Bank (collectively, the "Icelandic Affiliates")[9]; and (4) the Bank.  The specific requests are discussed in greater detail below.

## C.    The Motion to Quash

The Movants moved to quash the three subpoenas.  As a threshold matter, they argued that the "pending proceeding" rule bars all of the requested discovery.  Turning to the merits, they contended, in the main, that their personal financial records and information were private and confidential.  Furthermore, the subpoenas did not seek information relating to the "acts, conduct, or property or to the liabilities and financial condition of the debtor," and the information could not be used by the Foreign Representative to establish their liability.  In fact, pointing to the expert affidavits discussed above, the Movants argued that the Foreign

---

[9]    The Icelandic Affiliates include 101 Capital, 101 Chalet, Baugur, BG Capital ehf., Edmund Holding S.A., Eignarhaldsfelagio ISP ehf. *(a/k/a* ISP Holding ehf.), Fjarfestingafelagio Gaumur ehf., FL, FL Group Midtown Miami Ltd., FL Group USA Ltd., FLG Property LLC, Gaumur Holding S.A., Landic, Piano Holding S.A., Thu Blas61 ehf. and Thyrping.

7

Representative did not have viable claims against the Movants under Icelandic law.  Rather, the

Foreign Representative was demanding the type of information it would need to enforce a money

judgment against the Movants at a time when it was not even prosecuting an active lawsuit

against them.

The Foreign Representative responded, in the first instance, that the Movants lacked

standing to object to the third-party subpoenas.  Next, it argued that the discovery was consistent

with 11 U.S.C. § 1521(a)(4) and Rule 2004.[10]  The Movants controlled the Bank and personally

enriched themselves with the Bank's funds.  Moreover, Jóhannesson was convicted of "false

accounting" in Iceland, and his assets were subject to freeze orders issued by courts in Iceland

and the United Kingdom.  The discovery would enable the Foreign Representative to follow the

diverted funds in order to assess the viability of additional claims.  The discovery would also

clarify the purchase and ownership of the Co-op Property.  In this regard, the Movants paid more

than $24 million in 2006 and 2007 for the Co-op Property, and third-party discovery was needed

to test Jóhannesson's statement in the state court action, contradicted by other evidence, that he

only owned 1% of Unit 16A.   Finally, direct and indirect loans to Baugur and/or the Bank's

transactions with the Icelandic Affiliates were relevant to the diversion of the Bank's funds.

---

[10]    In addition, both sides discussed whether the discovery was available under 28 U.S.C. § 1782(a), which authorizes the *district court* to order discovery in connection with foreign proceedings.  The Foreign Representative had also sought discovery under the authority § 1782(a) in the *Discovery Motion*.  The Court questioned its authority to permit discovery under the provision, and instead, granted the *Discovery Motion* relying on 11 U.S.C. § 1521(a)(4) and Rule 2004.  (*See* Transcript of the hearing held Apr. 7, 2011, at 5) (ECF Doc. # 85).)

## DISCUSSION

**A.    Threshold Issues**

**1.    The "Pending Proceeding" Rule**

The Movants argue that the Foreign Representative's discovery is barred by the "pending proceeding" rule.  Under the rule, "once an adversary proceeding or contested matter is commenced, discovery should be pursued under the Federal Rules of Civil Procedure and not by Rule 2004."  *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002); *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) ("The well recognized rule is that once an adversary proceeding or contested matter has been commenced, discovery is made pursuant to the Fed. R. Bankr. P. 7026 *et seq.*, rather than by a Fed. R. Bankr. P. 2004 examination.").  The principle applies to pending state court litigation, *see Snyder v. Society Bank*, 181 B.R. 40, 42 (S.D. Tex. 1994) *aff'd sub nom. In re Snyder*, 52 F.3d 1067 (5th Cir. 1995), as well as foreign litigation in which discovery is available.  *See In re Petition of Board of Dirs. of Hopewell Int'l Ins. Ltd.*, 258 B.R. 580, 586 (Bankr. S.D.N.Y. 2001).

The "pending proceeding" rule is based on the different safeguards that attend Rule 2004 and civil litigation discovery.  The latter provides greater protection to adverse parties, including notice of the time and place of the examination and the right to attend, object to questions and cross-examine witnesses.  *See In re Dinubilo,* 177 B.R. 932, 939–40 & n. 12 (E.D. Cal. 1993) (contrasting the differences between Rule 2004 examinations and discovery under the Federal Rules).  The "pending proceeding" rule reflects a concern that a party to litigation could circumvent his adversary's rights by using Rule 2004 rather than civil discovery to obtain documents or information relevant to the lawsuit.  *Enron Corp.*, 281 B.R. at 841; *accord In re Wash. Mut., Inc.*, 408 B.R. 45, 51 (Bankr. D. Del. 2009) ("The primary concern of courts is the

use of Rule 2004 examinations to circumvent the safeguards and protections of the Federal Rules of Civil Procedure."); *In re Int'l Fibercom, Inc.*, 283 B.R. 290, 292 (Bankr. D. Ariz. 2002) ("The reason for the ["pending proceeding"] rule is to avoid Rule 2004 usurping the narrower rules for discovery in a pending adversary proceeding."); *Bennett Funding Group*, 203 B.R. at 29–30 (Rule 2004 discovery not appropriate where it would "unavoidably and unintentionally create a back door" to discovery in another proceeding).[11]

As discussed below, the use of Rule 2004 by a Foreign Representative is circumscribed by 11 U.S.C. § 1521(a)(4). Assuming that the "pending proceeding" rule applies to discovery under 11 U.S.C. § 1521(a)(4), the potential for unfairness that the rule seeks to prevent is not present. The state supreme court dismissed the Foreign Representative's complaint. The Foreign Representative has appealed that dismissal, the appeal is pending and it has not commenced an action against the state court defendants in Iceland. At present, there is no "pending proceeding" in which the Foreign Representative can obtain discovery.[12] Moreover, the Foreign Representative is only seeking documents; the discovery will not implicate any right the Movants would otherwise enjoy in civil discovery to have counsel present, object to questions or cross-examine witnesses.

## 2. Standing

The Foreign Representative contends that the Movants lack standing to object to the third-party subpoenas. *See Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975) ("In the absence of a claim of privilege a party usually does not have standing to object to

---

[11]     The "pending proceeding" rule does not prevent parties in interest from using Rule 2004 to obtain unrelated discovery. *Bennett Funding Group*, 203 B.R. at 29.

[12]     That the Foreign Representative may eventually litigate with the same defendants, here or in Iceland, does not call for a different conclusion. In analogous circumstances, a bankruptcy trustee is free to use Rule 2004 to obtain evidence against a target even though it is likely that the trustee will eventually sue the target.

a subpoena directed to a non-party witness."). The Movants have not asserted a privilege in the documents or information sought pursuant to the subpoenas. Nevertheless, the court may "quash, modify, or condition a subpoena to protect the person subject to *or affected by the subpoena* from unnecessary or unduly harmful disclosures of confidential information." FED. R. CIV. P. 45 advisory committee's note (1991) (emphasis added). "Accordingly, courts have found that individuals, whose banking records are subpoenaed, have a privacy interest in their personal financial affairs that gives them standing to move to quash a subpoena served on a non-party financial institution." *Arias-Zeballos v. Tan,* No. 06 Civ. 1268 (GEL), 2007 WL 210112, at *1 (S.D.N.Y. Jan. 25, 2007) (Fox, M.J.) (collecting cases); *accord Kenney, Becker LLP v. Kenney,* No. 06 Civ. 2975 (JSR), 2008 WL 681452, at *2 n.1 (S.D.N.Y. Mar. 10, 2008); *Solow v. Conseco, Inc.*, No. 06 Civ. 5988 (BSJ) (THK), 2008 WL 190340, at *4 (S.D.N.Y. Jan. 18, 2008) (Katz, M.J.); *Griffith v. United States,* No. Part I M8-85, 2007 WL 1222586, at *1 (S.D.N.Y. Apr. 24, 2007). Thus, the Movants have standing to oppose the subpoenas, at least to the extent that they are directed at their personal financial information.

**B.      The Disposition of the Motion to Quash**

**1.      Burden**

Rule 45(c) of the Federal Rules of Civil Procedure allows the court to modify or quash a subpoena.[13]  The burden of persuasion is borne by the movant.  *Concord Boat Corp. v.*

---

[13]      Rule 45(c)(3) states in pertinent part:

**(3) *Quashing or Modifying a Subpoena.***

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

. . .

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

*Brunswick Corp.*, 169 F.R.D. 44, 48 (1996).  The Movants object to the subpoenas because they seek the disclosure of private and confidential financial information.  The subpoenas do not subject Movants to an undue burden because they do not require the Movants to do anything. The Court may nevertheless quash or modify a subpoena to protect an individual non-party against the disclosure of personal, private financial information to avoid undue annoyance, embarrassment or oppression.  *Sierra Rutile Ltd. v. Katz*, No. 90 Civ. 4913 (JFK), 1994 WL 1815751, at *2 (S.D.N.Y. May 11, 1994); *see* FED. R. CIV. P. 26(c)(1).  Furthermore, the protected information is not limited to bank records, and includes any private information regardless of the form it takes.  *Solow*, 2008 WL 190340, at * 4 ("While subpoenas for bank records most often evoke privacy claims, there is no case, to this Court's knowledge, that has held that the only financial documents that are entitled to confidential treatment are bank records, or that it is only bank records that implicate a party's privacy interests.  Rather, the inquiry courts apply is whether the information itself is private, confidential, privileged, or highly sensitive, and not the form the records take.").  When a subpoena seeks the production of an individual's personal financial information, the court must balance the relevance of the information sought against the intrusion into the affected individual's privacy interests.  *Sierra Rutile Ltd.*, 1994 WL 815751, at *2; *see During v. City Univ. of N.Y.,* No. 05 Civ. 6992 (RCC), 2006 WL 2192843, at *2 (S.D.N.Y. Aug. 1, 2006) ("Subpoenas issued under Rule 45 of the Federal Rules of Civil Procedure are subject to Rule 26(b)(1)'s overriding relevance requirement.") (collecting cases).

---

(i) disclosing a trade secret or other confidential research, development, or commercial information . . . .

### 2.    The Scope of Discovery

Here, there is no lawsuit pending, and relevance must be determined by reference to the

various statutes and orders that empowered the Foreign Representative to take discovery.  Upon

recognition, and where "necessary to effectuate the purpose of this chapter and to protect the

assets of the debtor or the interests of the creditors," the bankruptcy court may grant the Foreign

Representative the authority to examine witnesses, take evidence or deliver information

concerning the debtor's assets, affairs, rights, obligations or liabilities."  11 U.S.C. §

1521(a)(4).[14]  Paragraph 6 of the *Second Recognition Order* tracks § 1521(a)(4):

> The Foreign Representative is hereby authorized to examine witnesses,
> take evidence, seek production of documents, and deliver information concerning
> the assets, affairs, rights, obligations or liabilities of Glitnir, as such information is
> required in the Icelandic Proceeding under the law of the United States.

In addition, Rule 2004 states in relevant part that the Court may allow a party in interest to

examine an entity and compel the production of documents only as to "the acts, conduct, or

property or to the liabilities and financial condition of the debtor, or to any matter which may

affect the administration of the debtor's estate."

The parties have focused most of their attention on Rule 2004.  The Movants suggest that

Rule 2004 is broader than 11 U.S.C. § 1521(a)(4), and neither the statute nor this Court can

expand the Rule 2004 discovery rights.  (*Motion* at 11 n.3 ("[N]o order of this Court, and nothing in

section 1521(a)(4), authorizes the Foreign Representative to take discovery that exceeds the already broad

---

[14]    Section 1521 states:

(a) Upon recognition of a foreign proceeding, whether main or nonmain, where necessary to
effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the
creditors, the court may, at the request of the foreign representative, grant any appropriate relief,
including –

. . .

(4) providing for the examination of witnesses, the taking of evidence or the delivery of
information concerning the debtor's assets, affairs, rights, obligations or liabilities.

scope of Bankruptcy Rule 2004.").)  I view the interplay between 11 U.S.C. § 1521(a)(4) and Rule

2004 differently.  Section 1521(a)(4) expressly governs the Foreign Representative's discovery

rights.  Bankruptcy Rule 2004 complements those rights, and may provide a procedural

mechanism to obtain a subpoena under Rule 9016 of the Federal Rules of Bankruptcy Procedure,

but cannot expand those rights beyond what the statute and the order issued pursuant to the

statute permit.[15]  *See* 28 U.S.C. § 2075 ("Such [bankruptcy] rules shall not abridge, enlarge, or

modify any substantive right."); *see Cent. Trust Co. v. Official Creditors' Comm. of Geiger*

*Enters., Inc.*, 454 U.S. 354, 358–59 (1982); *In re Stoecker*, 179 F.3d 546, 552 (7th Cir. 1999).

Thus, while analogies to Rule 2004 are instructive, the Foreign Representative must ultimately

demonstrate that its requests meet the statute's criteria.[16]  *Cf. Hopewell Int'l*, 258 B.R at 584–85

(denying application for discovery under Rule 2004 in an ancillary case that, although relevant to

the administration of the foreign estate, did not relate to the preservation or recovery of property

in the United States (citing *Petition of Treco*, 227 B.R. 343, 349–50 (Bankr. S.D.N.Y. 1998))).

---

[15]    For example, this Court has observed that § 1521(a)(4) may not authorize the "fishing expeditions"
associated with Rule 2004.  *In re SPhinX, Ltd., Case No. 06-11760 (RDD) (Order Denying Ex Parte Motion of the*
*Foreign Representatives for (A) an Order Compelling the Production of Documents and*
*Examination of Witnesses Pursuant to §1521 of the Bankruptcy Code and Rule 2004 of the Federal Rules of*
*Bankruptcy Procedure and (B) an Order Directing the Issuance of Letters Rogatory*, dated May 14, 2007, Ex. A at
6–7) (attached as Exhibit A to the *Reply in Further Support of the Motion of Jón Ásgeir Jóhannesson*
*and Ingibjörg Stefanía Pálmadóttir for Entry of an Order Pursuant to Rule 9016 of the Federal Rules of Bankruptcy*
*Procedure Quashing Certain Third Party Subpoenas or, in the Alternative, for Entry of a Protective Order*, dated
June 10, 2011 (ECF Doc. # 96).)

        In addition, Rule 2004 authorizes examination into "any matter which may affect the administration of the
debtor's estate."  The "estate" referred to in Rule 2004 is the one created when a petition is filed under sections 301,
302 or 303 of the Bankruptcy Code.  *See* 11 U.S.C. § 541(a).  The filing of a chapter 15 petition does not create an
"estate."

[16]    Since the Movants did not receive notice of the *Discovery Motion*, the Court's statements at the hearing
regarding the relevance or appropriateness of the discovery do not prevent the Movants from challenging the
discovery sought by the Foreign Representative.

The main area of contention relates to the requests for communications and documents involving the Movants' personal financial information.  The private information at issue, however, is not limited to the Movants' bank account records at RBC and Citibank.  For example, many of the requests seek information relating to the Movants' purchase of the Co-op Property.  In the course of the purchase process, the Movants would likely have submitted financial and other private information to the 50 GPN board of directors to obtain its approval.  Given the private nature of the information, the Court must balance the relevance of the information sought against the harm to the Movants from its disclosure.

With the exception of the Co-op Property, and specifically Unit 16A, this private information does not concern the "debtor's assets, affairs, rights, obligations or liabilities."  The Foreign Representative has not obtained a judgment against either Movant, and is not attempting to enforce a money judgment against their assets.

Furthermore, although the Foreign Representative's submission is replete with conclusory statements that the discovery will aid it in investigating potential claims, including those involving the diversion of the Bank's funds, the Foreign Representative has failed to amplify those claims.  The Complaint provides some insight, but the state court dismissed the Complaint on grounds of *forum non conveniens* and the Foreign Representative has not reinstituted the action in Iceland.  Furthermore, the claims under Icelandic law for breach of fiduciary duty against Jóhannesson or alter ego liability against Pálmadóttir are questionable, and while Icelandic law may support claims against both under the *culpa* principle, the Foreign Representative has not explained how the Movants' personal financial information is relevant to those claims.  The gravamen of the Foreign Representative's claim is that one (or both) of the Movants used their control of the Bank to cause it to make loans or transfer assets to

15

corporations in which they had a financial interest.  The strength of the Foreign Representative's claims does not appear to depend on whether the siphoned funds were subsequently transferred to the Movants.[17]

Other requests, however, are clearly germane to the assets, affairs, rights and obligations or liabilities of the Bank.  Two requests are expressly directed at documents and information relating to the Bank's interest in the Co-op Property.  As noted, the Bank has a lien on the shares of Unit 16A.  Documents or information relating to the value of those shares and the Bank's lien, including the payment of any debts secured by Unit 16A, are appropriate areas of discovery.  In addition, several of the requests seek information about the Icelandic Affiliates.  Most if not all are direct or indirect borrowers from the Bank, and in any event, the Movants lack standing to challenge these requests.  With this background, the Court turns to the specific requests attached to the subpoenas.

### 3.    RBC Subpoena

According to the Foreign Representative, RBC provided a $10 million line of credit to the Movants secured by the shares as well as a $7.5 million mortgage.  (*Discovery Motion* ¶ 27.) Request Nos. 1, 3 through 6, 9, and 11 generally seek documents and communications with or about the Movants regarding the Co-op Property, including the RBC lien, or documents relating to the Movants' acquisition of the Co-op Property:

---

[17]        The fifteenth cause of action in the Complaint asserted a fraudulent conveyance claim under New York Debtor and Creditor Law to recover the $2 billion allegedly looted from the Bank.  The claim appears to have been asserted on behalf of "present and/or future creditors" of the Bank.  Assuming that New York law applies, the fraudulent conveyance claim belongs to creditors under New York law, and the Foreign Representative is not a creditor of the Bank.  Unlike a bankruptcy trustee, the Foreign Representative cannot bring avoidance claims on behalf of other creditors under bankruptcy or state fraudulent transfer laws.  *See* 11 U.S.C. § 1521(a)(7).

**Request No. 1.** Any and all documents reflecting communications between You and Jóhannesson and/or Pálmadóttir concerning the Property, the Property Purchase, the Shares and/or the RBC Lien.

**Request No. 3.** Any and all documents reflecting communications between You and any of your past or present subsidiaries, predecessors, affiliates, investment vehicles, members, officers, directors, partners, employees, agents, representatives, and attorneys, and all other persons acting or purporting to act, directly or indirectly on behalf of any of them, concerning Jóhannesson and/or Pálmadóttir, the Property, the Property Purchase, the Shares and/or the RBC Lien.[18]

**Request No. 4.** Any and all documents provided to You by Jóhannesson and/or Pálmadóttir or the Corporation[19] relating to the Property, the Property Purchase, the Shares or the RBC Lien.

**Request No. 5.** Any and all documents relating to Jóhannesson and Pálmadóttir's application to purchase Shares and/or any interest in the Property.

**Request No. 6.** Any and all documents relating to your consideration of Jóhannesson and Pálmadóttir's application to purchase any Shares and/or interest in the Property.

**Request No. 9.** Any and all documents reflecting representations made by Jóhannesson and/or Pálmadóttir concerning the Property Purchase.

**Request No. 11.** Any and all documents concerning Jóhannesson's and/or Pálmadóttir's interest(s) in the Property and the Shares.

While these requests do not expressly ask for personal financial information about the Movants, communications with or about the Movants regarding the Co-op Property invariably call for the production of such information. The Movants maintained a banking relationship with RBC that was intertwined with the Co-op Property; the shares secured their line of credit and, apparently, a mortgage. Moreover, for the reasons stated, the Movants' acquisition of or interest in the Co-op Property is not relevant at this point to the Bank's assets, affairs, rights, obligations or liabilities. On the other hand, information pertaining to the Bank's lien on the shares of Unit 16A is. Accordingly, the motion to quash as to these requests is granted, except to

---

[18]    This request is much broader. It asks for any communications within RBC concerning the Movants, whether or not those communications relate to the Co-op Property.

[19]    The "Corporation" refers to 50 GPN.

17

the extent that they seek documents or information relating to the value of Unit 16A or the

Bank's lien in the shares of Unit 16A.

Request Nos. 2, 7, 8, 10 and 12 essentially seek the same information relating to the Co-

op Property, including the RBC lien, but do not mention the Movants:

**Request No. 2.**   Any and all documents reflecting communications between You
and the Corporation concerning the Property, the Property Purchase, the Shares
and/or the RBC Lien.

**Request No. 7.**   Any and all documents reflecting the terms of the Property
Purchase, including but not limited to financial statements, term sheets, letter
agreements, contracts, financing statements, and/or mortgages.

**Request No. 8.**   Any and all documents reflecting the terms of any oral
agreements relating to the Property Purchase, which are not manifested in writing.

**Request No. 10.** Any and all documents indicating payments that have been made
and/or which are contemplated in connection with the Property Purchase, the
Property, and/or the Shares.

**Request No. 12.** Any and all documents concerning the RBC Lien, including, but
not limited to, the amount outstanding relating to the RBC Lien.

This omission of the names of Jóhannesson and Pálmadóttir does not alter the disposition

of the requests.  Any communications regarding the purchase or the RBC lien will invariably

involve the Movants' financial information; they purchased the Co-op Property and granted the

liens to RBC.  In addition, the Movants' acquisition of or relative interests in the Co-op Property

is immaterial unless and until either or both become judgment creditors.  Accordingly, the

motion to quash as to these requests is granted, except to the extent that they seek documents or

information relating to the value of Unit 16A or the Bank's lien in the shares of Unit 16A.

Request Nos. 13 and 14 are broader and ask for any documents concerning the Movants'

assets, liabilities, income, debt and financial status and any bank or other accounts or assets at

the RBC:

> **Request No. 13.**  Any and all documents concerning any checking accounts, savings accounts, money market accounts, safe deposit boxes, lines of credit, loans, certificates of deposit, or any similar account in the name of or used by Jóhannesson and/or Pálmadóttir.
>
> **Request No. 14.**  Any and all documents concerning Jóhannesson's and/or Pálmadóttir's assets, liabilities, income, debt, and/or financial status, including, but not limited to, bank statements, cancelled checks, deposit slips, wire transfers, financial statements, tax returns, credit reports, profit/loss statements, and/or balance sheets.

These requests are plainly designed to get financial information about the Movants without regard to any connection between that information and the Bank's assets, liabilities, income, debts or financial affairs.  The motion to quash is granted as to these requests.

Request Nos. 15 and 16 relate to documents concerning the Icelandic Affiliates.  As noted, these requests are relevant, and Movants lack standing to challenge them.  Consequently, the motion to quash this aspect of the RBC Subpoena is denied.

Finally, Request No. 17 asks for "[a]ny and all documents concerning any interest(s) Glitnir might have in the Property and/or the Shares."  The Bank's interests plainly fall within the scope of permissible discovery, the Movants lack standing to challenge the request and the motion to quash this aspect of the RBC Subpoena is denied.

### 3.    Citibank Subpoena

The Foreign Representative states that the Movants use a joint account (No. 9973016659) at Citibank to pay their maintenance and other expenses associated with the Co-op Property. (*Discovery Motion* ¶ 27.)  Request Nos. 1, 2, 4, 6, 7, and 8 in the Citibank Subpoena seek documents and information relating to the Movants' assets, liabilities and common debts, and various bank and other accounts at Citibank:

> **Request No. 1.**  Any and all documents and communications relating to account no. 9973016659.

**Request No. 2.**   Any and all documents concerning any checking accounts, savings accounts, money market accounts, safe deposit boxes, lines of credit, loans, certificates of deposit, or any similar account in the name of or used by Jóhannesson and/or Pálmadóttir.

**Request No. 4.**   Any and all documents reflecting communications between You and Jóhannesson and/or Pálmadóttir.

**Request No. 6**.   Any and all documents reflecting communications between You and any of your past or present subsidiaries, predecessors, affiliates, investment vehicles, members, officers, directors, partners, employees, agents, representatives, and attorneys, and all other persons acting or purporting to act, directly or indirectly on behalf of any of them, concerning Jóhannesson and/or Pálmadóttir.

**Request No. 7.**   Any and all documents provided to You by Jóhannesson and/or Pálmadóttir.

**Request No. 8.**   Any and all documents concerning Jóhannesson's and/or Pálmadóttir's assets, liabilities, income, debt, and/or financial status, including, but not limited to, bank statements, cancelled checks, deposit slips, wire transfers, financial statements, tax returns, credit reports, profit/loss statements, and/or balance sheets.

These requests are similar to Request Nos. 13 and 14 in the RBC Subpoena, and the

motion to quash is granted as to these requests.

Request Nos. 3 and 5 concern the Icelandic Affiliates, and the motion to quash as to those

requests is denied for the reasons discussed above.

**4.      50 GPN Subpoena**

The 50 GPN Subpoena contains twelve requests.  With one exception, all of the requests

pertain to the Co-op Property.  Request Nos. 1, 4, 6, 7, 9 and 11 focus on communications with

the Movants regarding the Co-op Property or documents relating to the circumstances

surrounding the Movants' acquisition of the Co-op Property or their interest in the Co-op

Property:

**Request No. 1.**   Any and all documents reflecting communications between You and Jóhannesson and/or Pálmadóttir concerning the Property, the Property Purchase, the Shares and/or the RBC Lien.

20

**Request No. 4.**   Any and all documents reflecting communications between You and any of your past or present subsidiaries, predecessors, affiliates, investment vehicles, members, officers, directors, partners, employees, agents, representatives, and attorneys, and all other persons acting or purporting to act, directly or indirectly on behalf of any of them, concerning Jóhannesson and/or Pálmadóttir, the Property Purchase, the Shares associated with the Property and/or the RBC Lien.

**Request No. 6.**   Any and all documents relating to Jóhannesson and Pálmadóttir's Application to purchase any Shares and/or any interest in the Property.

**Request No. 7.**   Any and all documents relating to your consideration of Jóhannesson and Pálmadóttir's Application to purchase any Shares and/or interest in the Property.

**Request No. 9.**   Any and all documents reflecting representations made by Jóhannesson and/or Pálmadóttir concerning the Property Purchase.

**Request No. 11.**   Any and all documents concerning Jóhannesson's and/or Pálmadóttir's interest(s) in the Property and the Shares.

These requests correspond to Request Nos. 1, 3 through 6, 9, and 11 in the RBC Subpoena.  Further, like RBC Request No. 3, Request No. 4 in the 50 GPN Subpoena seeks financial information that is not limited to the Co-op Property.  The motion to quash as to these requests is granted, except to the extent that they seek documents or information relating to the value of Unit 16A or the Bank's lien in the shares of Unit 16A.

Request No. 2 asks for documents reflecting communications between 50 GPN and the Movants concerning the subpoena served by the Foreign Representative on 50 GPN during the state court litigation. This request is unrelated to the Bank's financial affairs, and the motion to quash it is granted.

Request Nos. 3, 5, 8 and 10 relate to the Co-op Property but do not refer to the Movants:

**Request No. 3.**   Any and all documents reflecting communications between You and RBC concerning the Property, the Property Purchase, the Shares and/or the RBC Lien.

21

**Request No. 5.**  Any and all documents reflecting the terms of the Property Purchase, including but not limited to financial statements, term sheets, letter agreements, contracts, financing statements, and/or mortgages.

**Request No. 8.**  Any and all documents reflecting the terms of any oral agreements relating to the Property Purchase, which are not manifested in writing.

**Request No. 10.**  Any and all documents indicating payments that have been made and/or which are contemplated in connection with the Property Purchase, the Property, and/or the Shares.

As with the RBC Subpoena Request Nos. 2, 7, 8, 10 and 12, the motion to quash is granted, except to the extent that they seek documents or information relating to the value of Unit 16A or the Bank's lien in the shares of Unit 16A.

Finally, Request No. 12 seeks documents concerning the Bank's interest in the Co-op Property, and the motion to quash as to this request is denied.

The foregoing is without prejudice to the Foreign Representative's right to seek further discovery from any of the subpoenaed parties or any other party.  The Foreign Representative should, however, give notice of any future discovery motions to the persons affected by the proposed discovery.  The Court has considered the parties other arguments, and concludes that they lack merit.

So ordered.

Dated: New York, New York
       August 19, 2011

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge